## Heyl's Estate

[redacted]

*Robert T. McCracken, Joseph Carson,* and *Sheldon F. Potter,* for exceptants.

*John Wintersteen* and *Harry J. Alker, Jr.,* contra.

VAN DUSEN, P. J., June 18, 1937. — Exceptant thus states the principal question involved:

"Is a trustee justified in investing trust monies in a mortgage secured upon real estate which does not yield sufficient income to meet taxes on the mortgaged property and interest on the mortgage secured thereon?"

The auditing judge answered in the affirmative. There were a number of items: A golf club, three city properties with old buildings, a tract of unimproved suburban land, and a suburban dwelling converted into an apartment and boarding house.

Cases are cited from other jurisdictions which declare the negative of this general proposition, under varying circumstances, and it is said that there is nothing outside of this State to the contrary: Adair et al. v. Brimmer et al., 74 N. Y. 539; In re McDowell et al., 102 Misc. 275, 169 N. Y. Supp. 853; Durant v. Crowley et al., 197 N. Y. App. Div. 540, 189 N. Y. Supp. 385; In re Jones' Estate, 155 Misc. 315, 280 N. Y. Supp. 521; Roach's Estate, 50 Ore. 179; Kimball v. Reding, 31 N. H. 352; Macleod

v. Annesley, 16 Beavan 600, 51 Eng. Repr. 912. In our own recent case of Flood's Estate, 24 D. & C. 503, the auditing judge said: "The mere fact that the mortgage was taken on unimproved land is of itself no criterion of the propriety of the investment if the value was there", and exceptions to this were dismissed. Our attention has not been called to any contrary authority in Pennsylvania.

Whether a trustee is justified in investing in a mortgage on unimproved real estate or non-revenue-producing real estate is to be judged according to the facts in each case. All land improved and unimproved is supposed to be marketable under normal conditions at a price. The margin between present market value and the amount of the mortgage is supposed to be sufficient to take care of fluctuations in value, and of the arrears of interest and taxes which might accrue before foreclosure is necessary. If conditions become abnormal so that the land becomes unsalable, that is a risk which any investment runs.

To hold the contrary at this late day, after trust investments in mortgages have been so long a subject of judicial discussion, would be open to the reproach that a new standard is being set up which was not before the trustee at the time the investment was made, and which is induced after the event by the unfortunate circumstances of recent years. It is our duty to apply the standard of the ordinary prudent man dealing with his own affairs at the time: Hammett's Estate, 23 D. & C. 353; Detre's Estate, 273 Pa. 341; Brown's Estate, 287 Pa. 499. And we cannot say as a matter of law that the ordinary prudent man dealing with his own affairs would not take a mortgage on unimproved or relatively unproductive property under any circumstances, and though the market value of the ground at the time provided a prudent margin above the amount invested.

The trustee argues that it has complied with the statutes regulating trust investments by producing appraisements and is absolved from further considerations. We

do not mean to say that this is all that is necessary. The investment must still be prudent, and cases might arise in which there were factors which demonstrated that the investment was imprudent, though the appraisement was sufficient. Second mortgages have never been considered prudent, though no statute prescribed first mortgages until the Act of April 26, 1929, P. L. 817, amending the Fiduciaries Act of June 7, 1917, P. L. 447. All that we do say is that inability of the land to produce revenue for interest and taxes does not of itself characterize the investment as imprudent.

One of the life tenants and two of the remaindermen employed counsel and agreed in writing to pay counsel certain percentages of the "monies recovered" from interest and principal. After the account was filed, objection was made to certain items of investment, and accountant replaced them with cash without contest. At the audit, counsel presented the agreement and claimed compensation, but the auditing judge refused to hear the claim. Upon the argument of the exceptions, Harris' Appeal, 323 Pa. 124, is pressed upon us. In that case the owner of property employed an attorney in condemnation proceedings. There was a mortgage on the property, but the mortgagee took no steps. The amount recovered was insufficient to pay the mortgage. It was held that the attorney's compensation should be paid out of the fund before the mortgage. This decision was not brought to the attention of the auditing judge, and in view of his ruling the claim was not fully presented.

A number of questions present themselves, and as there was no argument against the claim, we think it best to recommit the account to the auditing judge in order that he may hear the claim and we may have the benefit of full presentation of the facts and of his views. All persons who are affected by the claim, including the attorney's clients, should have notice of the claim and an opportunity to be heard.

Exceptions nos. 1 to 9 are dismissed. Exception no. 10 is sustained pro forma, and, the auditing judge not objecting, the account is recommitted to the auditing judge for the purpose indicated.